80 N.J. Super. 15 (1963)
192 A.2d 596
JOHN S. VIDUCICH, PLAINTIFF-RESPONDENT,
v.
GREATER NEW YORK MUTUAL INSURANCE COMPANY, AN INSURANCE CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1963.
Decided July 1, 1963.
*16 Before Judges CONFORD, GAULKIN and KILKENNY.
Mr. Jerome S. Lieb argued the cause for appellant (Messrs. Harkavy & Lieb, attorneys).
Mr. Arnold M. Stein argued the cause for respondent (Messrs. Stein & Einhorn, attorneys).
The opinion of the court was delivered by GAULKIN, J.A.D.
Defendant appeals by our leave from the denial of its motion for summary judgment.
The question presented is whether the pleadings, depositions and affidavits which were before the trial judge show "palpably that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment * * * as a matter of law." R.R. 4:58-3. We think that they do, and that the summary judgment should have been granted.
Plaintiff's complaint alleges that defendant issued workmen's compensation and public liability insurance policies to plaintiff's employer, Code Corporation (Code), under the terms of which "defendant reserved the right to inspect the premises, machinery, apparatus and other equipment" of Code *17 and the right "to make recommendations and to provide supervision * * * for the correction, removal or avoidance of any defects or potential defects or potential industrial hazards * * * and to prescribe and enforce rules and regulations" relating thereto; that "one of the reasons" defendant reserved these rights "was to make certain that the premises, machinery, apparatus and other equipment were reasonably safe, and presented no unreasonable risk of harm to employees of Code Corporation"; that "on at least one occasion prior to November 18, 1959" defendant inspected the machinery "pursuant to the terms" of the policies, but "[s]uch inspection or inspections were performed in a negligent and careless manner, and in utter disregard of the fact that there existed upon the premises of Code Corporation a certain wood-shaping machine which was maintained in a dangerous manner, and which had improper equipment, faulty or no safety devices, and * * * was a dangerous instrumentality which presented an unreasonable risk of harm to employees of Code Corporation * * *." Plaintiff alleged that as a result of this he was injured on November 18, 1959 while operating said machine. Another count of the complaint repeats the foregoing allegations and adds the charge that defendant "negligently and carelessly selected, hired and retained incompetent * * * persons * * * to make such inspection or inspections * * *."
Defendant's answer asserts:
"The right of inspection reserved by the Defendant in its policies of insurance is a privilege to the Defendant in connection with its determination of the risk to be assumed and the premium to be charged for same. Such reservation imposed no duty upon the Defendant to its assured, Plaintiff or anyone else and Defendant did not assume such liability or duty."
The workmen's compensation policy provides:

"4. Inspection and Audit.
The company and any rating authority having jurisdiction by law shall each be permitted to inspect the work places, machinery and *18 equipment covered by this policy and to examine and audit the insured's books, vouchers, contracts, documents and records of any and every kind at any reasonable time during the policy period and any extension thereof and within three years after termination of this policy, as far as they relate to the premium bases or the subject matter of this insurance."
The liability policy provides:

"2. Inspection and Audit.
The company shall be permitted to inspect the insured premises, operations and elevators and to examine and audit the insured's books and records at any time during the policy period and any extension thereof and within three years after the final termination of this policy, as far as they relate to the premium bases or the subject matter of this insurance."
The affidavits and depositions establish without question that Code was a new venture, incorporated in June 1959 to manufacture guitars. It applied to defendant for insurance and defendant caused an inspection to be made of Code's premises and machinery on July 28 by Underwriters Reporting Service and on July 29 by Underwriters K. Bureau. Defendant's Mr. Schwarz testified: "This Underwriting and Rating Report  Since the Firm, or the Code Corporation, being a new venture, had not been inspected by the appropriate rating authorities, it was incumbent upon the Insurance Carrier to inspect for rating and classification in order to determine its premium remuneration." The reports of these inspections were submitted to defendant, and disclosed no dangers. Code had no knowledge of the contents of the report.
The policies were countersigned and issued August 19, 1959, but they covered retroactively from July 17, 1959. Plaintiff contends, and it is not denied, that the risk must have been covered on binder prior to the issuance of the policies.
To support his cause of action against defendant, plaintiff must show (1) that defendant contracted to make inspections and report the result to Code, or (2) undertook to do so gratuitously under circumstances which created a duty upon defendant, *19 owed to Code or its employees, to do it with due care, and (3) in either case was negligent, such negligence resulting proximately in the injury. Van Winkle v. American Steam Boiler Co., 52 N.J.L. 240 (Sup. Ct. 1890); Nelson v. Union Wire Rope Corp., 39 Ill. App.2d 73, 187 N.E.2d 425 (App. Ct. 1963); Restatement, Torts § 325; Annotation, 6 A.L.R.2d 284 (1949).
Defendant did not contract to make inspections or report the results to Code. Indeed, plaintiff's complaint does not allege that it did. The complaint recognizes that the quoted provisions of the policies merely "reserve the right" to defendant to make such inspections. Cf. Van Winkle, supra, at p. 242.
However, plaintiff argues that, having undertaken to make the inspection, defendant was under a duty to exercise due care to make it properly, and to report the findings to Code. In support of his contention, plaintiff cites Van Winkle, supra; Bacican v. American Mutual Liability Insurance Co., 29 F.R.D. 133 (E.D. Pa. 1961); Smith v. American Employer's Insurance Company, 102 N.H. 530, 163 A.2d 564 (Sup. Ct. 1960); Bollin v. Elevator Constr. & Repair Co., 361 Pa. 7, 63 A.2d 19 (Sup. Ct. 1949); Sheridan v. Aetna Casualty & Surety Co., 3 Wash.2d 423, 100 P.2d 1024 (Sup. Ct. 1940). However, all of these contained elements which do not appear here, and none of them justifies a recovery upon the facts in the case at bar.
Since Van Winkle v. American Steam Boiler Co., supra, is not only a leading and much cited case but was decided by our own Supreme Court, we shall discuss it in some detail. It was heard upon a demurrer to a declaration which alleged the following:
Van Winkle was the owner of a mill near one owned by the Ivanhoe Paper Company in which was located a large steam boiler "so situated that if it exploded the building of [Van Winkle] would be inevitably damaged." American Steam Boiler Insurance Company insured Ivanhoe's boiler. Its policy provided that:
*20 "Prevention of accidents by explosion being the primary object of this company, it is hereby agreed that the inspector of this company shall, at all reasonable times, have access to said boiler or boilers, and the machinery connected therewith, and every and all facilities be offered to said inspector, when this company shall so desire, for the purpose of making an examination of said boiler or boilers or machinery; and should such inspector, upon said examination, discover any defect, affecting the safety of said boiler or boilers or machinery, he shall notify the assured; or should the assured discover any defect, or be notified by any person having any interest therein of any defect or source of danger to said boiler or boilers or machinery, and upon such defect being brought to the knowledge of the assured, or of his agent, the said boiler or boilers or machinery so affected shall cease to be worked until such defect shall be corrected or repaired by the assured to the entire satisfaction and approval of the inspector of this company, and upon a failure so to do this policy shall become null and void." (at p. 241)
The court held:
"It is plain, from these references to this policy, that the defendant was in no wise obligated by its contract to make any inspection whatever of this piece of machinery. It acquired the right to do so by its inspector when it should so desire, but there was nothing in the agreement compelling it to perform such office. And, consequently, if the insurance company had altogether refrained from making an inspection of this boiler, or had refused so to do, it would seem clear that it would have incurred no responsibility either to the assured or to the plaintiff for the disaster that has occurred. In such a situation it would have owed to the former no duty by force of contract, and to the latter none by force of the law." (at p. 242)
However, said the court,
"The declaration avers, and the fact of course is admitted by the demurrer, that the defendant, in the exercise of its volition, made repeated inspections of the boiler in question, and furnished the required certificates for the guidance of the engineer of the assured. No one can doubt that by such a course of action a duty in favor of the assured was imposed on the defendant, by the operation of the contract itself, to act with ordinary skill and care, both with respect to its inspection and its certificate. It is deemed that there is no room for doubt that for the proximate damage occasioned by the absence of such care and skill, the defendant became answerable to the assured per contractum; as it had stipulated for such care and skill by the terms of its contract, read in the light of legal rules." (at pp. 242-243; emphasis ours)
*21 The question then narrowed itself to whether Van Winkle, being a stranger to the contract between Ivanhoe and the insurance company, had the right to sue the insurance company for its negligence. The court held that he had.
It said: "[t]he boiler, unless properly handled, was a dangerous thing * * *" (at p. 243); Ivanhoe was required to exercise a high degree of care to keep it from injuring others; "[i]t was the plain duty of [Ivanhoe] to have it inspected at proper periods, and the case shows that, if that had been done the calamity would have been avoided. * * * Having this boiler in use * * * the paper company could not, by any device, free itself from the duty of operating it with the utmost care and skill, nor from the liability to indemnify those who should be injured, * * *." (at pp. 244-245)
"The question," continued the court (p. 245) "is whether the duty thus defined became incumbent on the [insurance company] to such a degree as to place upon it a responsibility of a similar kind, for the damage now in question." The court answered that question as follows:
"What this defendant did was this: It co-operated with the owner of this dangerous instrument in its management, in a particular indispensable to its safe use, and it thereby in that degree constituted itself the agent or the substitute of such owner. It performed a series of acts that could not be performed by the owner without the responsibility just mentioned; and as such responsibility belonged, not to the ownership of the machine, but to the function of operating it, it does not seem that any one could perform such function without incurring the responsibility. Very plainly the defendant stood within the spirit of the rule that laid upon the proprietor of the boiler the duty of exercising care and skill in its use. * * *
And it would seem that there is a broader ground than the one above defined, on which the present case can be based. It is this: that in all cases in which any person undertakes the performance of an act which, if not done with care and skill, will be highly dangerous to the persons or lives of one or more persons, known or unknown, the law, ipso facto, imposes, as a public duty, the obligation to exercise such care and skill. * * *" (at pp. 245, 246, 247)
We see, then, that the Van Winkle case is plainly distinguished from the case at bar for several major reasons, among *22 which, especially pertinent here, is that in that case the insurance company "made repeated inspections of the boiler in question, and furnished the required certificates for the guidance of the engineer of the assured." (at p. 242)
Smith v. American Employers' Insurance Company, supra, was also heard on defendant's motion to dismiss the complaint. The terms of the policy are not given in the opinion. At page 566 it is said: "It appears that for some time prior to the accident the defendant [insurance company] * * * had conducted monthly inspections * * * to make sure the plant was in a safe condition, to notify [employer] of any dangers, and to recommend changes in the interest of avoiding accidents. * * *"
In Bollin v. Elevator Constr. & Repair Co., supra, the insurance company had specifically undertaken to make periodic inspections of the insured elevator and to file the reports of the condition of the elevator required by the city ordinance, and this had been done for a period of one and a half years prior to the accident. Sheridan v. Aetna Casualty & Surety Co., supra, was a similar case.
In Bacican v. American Mutual Liability Insurance Co., supra, the policy contained the provision which is contained in the workmen's compensation policy at bar. The insurance company pleaded that under this provision it "owed plaintiff no duty" (29 F.D.R., at p. 135). Bacican moved to strike this defense, contending that "under the law of Pennsylvania, Evans v. Otis Elevator Company, 403 Pa. 13, 168 A.2d 573," defendant owed a duty not only to the employer but to plaintiff. It was the insurance company, resisting the motion, that contended "that at time of trial, the Court must determine what, if any, duties the defendant had undertaken and to whom such duties were applicable." The trial court agreed and denied Bacican's motion. Evans v. Otis Elevator Company, cited by Bacican, involved a situation in which the elevator company contracted to make semi-monthly examinations of the elevator.
*23 In short, these cases are also distinguishable from the case at bar.
Section 325 of the Restatement of Torts says:
"One who gratuitously undertakes with another to do an net or to render services which he should recognize as necessary to the other's bodily safety and thereby leads the other in reasonable reliance upon the performance of such undertaking
(a) to refrain from himself taking the necessary steps to secure his safety or from securing the then available protective action by third persons, or
(b) to enter upon a course of conduct which is dangerous unless the undertaking is carried out, is subject to liability to the other for bodily harm resulting from the actor's failure to exercise reasonable care to carry out his undertaking."
In the case at bar defendant did nothing which could have led Code or any employee to believe that defendant had undertaken to make inspections or to report to Code dangers which it found, and nothing which could have led anyone to rely upon the performance by defendant of any such undertaking. As we have said, Code was organized in June; there was only one inspection, in July; there was no suggestion at any time that defendant would make other inspections or report to Code. Code did not await, or even expect, a report or advice from defendant. As a matter of fact, even after the accident Code did not put a guard on the machine and its president insisted in the depositions that the machine could not be operated with a guard.
In Nelson v. Union Wire Rope Corp., supra, 187 N.E.2d, at p. 449, the court said that "The element of reliance as a basic and necessary prerequisite to liability in such a case is recognized throughout the Restatements of the American Law Institute," citing not only § 325 of the Restatement of Torts but also § 90 of the Restatement of Contracts, §§ 354 and 378 of the Restatement of Agency, and Professor Seavey's article entitled "Reliance Upon Gratuitous Promises or Other Conduct" in 64 Harv. L. Rev. 913 (1951).
*24 It is not necessary for us to decide whether, in every case in which it is sought to hold a gratuitous undertaker, proof of such reliance is an absolute essential. For present purposes it is sufficient to say that we agree that generally such proof is essential, and there is nothing in the facts before us that suggests a reason to depart from the general rule. Although the case was heard on a motion for summary judgment, the plaintiff apparently obtained, through discovery, all of the evidence available to him. We find nothing in that evidence or in the other material which was before the trial judge on the motion for summary judgment to suggest that the plaintiff could prevail at a trial.
The order appealed from is therefore reversed with directions to enter judgment in favor of defendant and against plaintiff.