**Joseph DARAIO and Dorothea Daraio, h/w, Plaintiffs,**

v.

**CAREY CANADA, INC., et al., Defendants.**

**Civil Action No. 89–8037.**

United States District Court, E.D. Pennsylvania.

March 25, 2004.

Hal Pitkow, Newtown, PA, for Plaintiffs.

Jeffrey D. Grossman, Stradley, Ronon, Stevens & Young, L.L.P., Philadelphia, PA, for defendants.

### MEMORANDUM

ROBERT F. KELLY, Senior District Judge.

Presently before this Court is the Defendant's, Aetna Life and Casualty Company, n/k/a Travelers Casualty and Surety Company ("Aetna"), Motion for Summary Judgment. For the following reasons, Aetna's Motion will be granted.

### I. BACKGROUND

The Plaintiff, Joseph Daraio, worked at an asbestos plant in Berlin, New Jersey (the "Berlin plant"). The Berlin plant was owned and operated by Owens Corning Corporation ("Owens Corning"). Mr. Daraio worked at the Berlin plant during the summer of 1960 and again from 1961 thru

1966. In 1987, Mr. Daraio learned that he suffered from asbestosis. Aetna was the Workers' Compensation carrier for the Berlin plant. During Mr. Daraio's tenure at the Berlin plant, Aetna performed dust studies and made various recommendations to Owens Corning and the Berlin plant based on the results of the dust studies. The Berlin plant had a safety team in place which decided whether to adopt the recommendations of Aetna. Often times, the Berlin plant's safety team would adopt Aetna's recommendations, yet other times, the recommendations were not adopted.

The Plaintiffs state that upon completing the dust studies, Aetna had a duty to warn the Berlin plant's employees directly about the levels of asbestos found in the dust studies rather than only report its findings to the Berlin plant's safety team. Plaintiffs also argue that based on its findings, Aetna's duties included making sure that its recommendations were adopted by the Berlin plant safety team.

## II. STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is genuine only if there is a sufficient evidentiary basis on

which a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. A factual dispute is material only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989)(citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548 (1986)). Further, the non-moving party has the burden of producing evidence to establish *prima facie* each element of its claim. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. *Id.* at 322, 106 S.Ct. 2548; *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

## III. DISCUSSION

The Plaintiffs argue that upon completing dust studies in the Berlin plant, Aetna was then required to warn the Berlin plant's employees directly about its findings. Four different theories are set forth in Plaintiffs' Response Brief for holding Aetna liable. Specifically, the Plaintiffs argue that Aetna is liable based upon: 1) Section 324A of the Restatement (Second) of Torts; 2) Section 323 of the Restatement (Second) of Torts); 3) the Third Party Beneficiary status of Mr. Daraio; and 4) the Breach of Aetna's Fiduciary Obligation to Mr. Daraio.

■ Before this Court engages in a discussion of the various theories Plaintiffs have set forth, it is important to note what is not at issue. The parties are in agreement that New Jersey law applies in this case. "A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state in determining which state's law to apply to the substantive issues before it." *Blakesley v. Wolford*, 789 F.2d 236, 238 (3d Cir.1986) (citations omitted). The Pennsylvania Supreme Court has also stated that:

> [i]n determining which state has the greater interest in the application of its law, one method is to see what contacts each state has with the accident, the contacts being relevant only if they relate to the policies and interests underlying the particular issue before the court." When doing this it must be remembered that a mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than a quantitative scale."

*Cipolla v. Shaposka*, 439 Pa. 563, 566, 267 A.2d 854, 856 (1970)(internal quotation marks and citation omitted). This Court agrees that New Jersey has the greater weight of the contacts. Mr. Daraio is a resident of New Jersey and the alleged injury caused by Aetna occurred while Mr. Daraio was working at the Berlin plant in New Jersey. Thus, New Jersey law applies.

Next, the Plaintiffs do not state that Aetna was negligent in its performance of the dust studies. Rather, the Plaintiffs allege that by performing the dust studies, Aetna had a duty to warn the Berlin plant's employees directly about its findings and to ensure that its recommendations were followed by the Berlin plant safety team.

Despite Plaintiffs' attempt to expand the scope of Aetna's "undertakings," the only "undertakings" by Aetna in this case were the dust studies and subsequent recommendations made to the Berlin plant safety team. There is nothing in the record to suggest that these dust studies or recommendations were negligently completed. In effect, Plaintiffs argue that upon completing the dust studies, Aetna had an affirmative duty to make sure that the Berlin plant was safe. However, as will be explained, Aetna at no point assumed this duty since it was always the responsibility of the Berlin plant and its safety team to make sure that the plant was safe.

## A. SECTION 324A and SECTION 323

■ Plaintiffs first argue that Aetna is liable under Section 324A of the Restatement (Second) of Torts. This section creates liability as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of the harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 324A (1965). Additionally, the Plaintiffs also assert Aetna is liable under Section 323 which reads:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to

the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 323 (1965).[1] To be found liable, there are two initial thresholds. First, there is a prerequisite that the "undertaking" was performed negligently. Additionally, in the context of this case, "[r]eliance on the part of the insured is a necessary prerequisite to the imposition of liability" under either Section 324A or Section 323. *Jackson v. N.J. Mfrs. Ins. Co., P.E.,* 166 N.J.Super. 448, 458, 400 A.2d 81, 86 (1979), *implied overruling recognized on other grounds, Seeley v. Cincinnati Shaper Co., Ltd.,* 256 N.J.Super. 1, 15 n. 17, 606 A.2d 378, 384 n. 17 (1992).

As stated previously, Aetna's "undertakings" were the dust studies and recommendations made to the Berlin plant's safety team. Plaintiffs argue Aetna failed to use reasonable care by not warning the employees at the Berlin plant directly about the dangerous levels of asbestos dust found in the air at the Berlin plant. However, Aetna never assumed this "undertaking." Rather, the creation of a safe work environment remained the responsibility of Owens Corning. Since there is no evidence that Aetna acted negligently in the performance of the dust studies or its recommendations to Owens Corning, there is no liability under either Section 324A or Section 323.

While Aetna performed dust studies and made recommendations, the overall responsibility for safety at the Berlin plant remained with the Berlin plant itself and its own safety team. This is best illustrated by the deposition testimony of Richard Grimmie ("Grimmie"). Grimmie was a production supervisor during Mr. Daraio's tenure at the Berlin plant.[2] He testified that it was the Berlin plant safety team who decided whether to adopt the recommendations of Aetna. For example, Grimmie testified that Aetna recommended that the Berlin plant install a vacuum cleaning system to eliminate hand room sweeping, however, the Berlin plant chose not to adopt this recommendation because of the system's cost. (Rep. Br. of Def. Aetna in Supp. of its Mot. for Summ. J., Ex. D, at 45). Additionally, Grimmie testified that the ultimate decision of how best to proceed in light of Aetna's recommendations remained with the Berlin plant manager, not Aetna. (*Id.,* Ex. C, at 113). As such, the Berlin plant never delegated the responsibility of maintaining a safe work environment to Aetna. Aetna's role was limited to its performance of dust tests so that Owens Corning and the Berlin plant safety team could then decide how best to proceed. The Plaintiffs have not come forward with evidence to illustrate that Aetna was negligent in this "undertaking."

Additionally, there was no reliance on the recommendations by the Berlin plant since the Berlin plant itself remained responsible for the safety of the plant. In an attempt to show that the Berlin plant relied on Aetna to make the plant safe, the Plaintiffs have set forth the deposition tes-

**1.** This Court's analysis will focus on Section 324A. However, my analysis also applies to Section 323. First, like Section 324A, to be liable under Section 323, the "undertaking" must be negligently performed. Additionally, subsections (a) and (b) of Section 323 mirror subsections (a) and (c) of Section 324A with the exception that Section 324A imposes liability on the part of the actor to a third person, and Section 323 does not.

**2.** In fact, Grimmie had various supervisory titles during his tenure at the Berlin plant.

timony of Durward M. Stayton, Jr. ("Stayton"), an employee of Aetna. During his deposition, Stayton testified that Owens Corning relied upon Aetna to conduct dust tests. (Pls.' Ans. and Mem. of Law in Opp'n to Def. Aetna's Mot. for Summ. J., Ex. I, at 47). However, the only thing this testimony illustrates is that Owens Corning relied upon Aetna to perform dust studies, not that Owens Corning relied upon Aetna to create a safe work environment. There is no evidence that these dust studies were performed negligently, so this alone does not create a material issue of fact.

At oral argument, Plaintiffs' Counsel argued that it is proper to hold Aetna liable based on *Van Winkle v. American Steam–Boiler Insurance. Co.,* 52 N.J.L. 240, 19 A. 472 (N.J.1890). However, this Court finds that *Van Winkle* is distinguishable. The differences between the instant case and *Van Winkle* are two-fold. In *Van Winkle,* the insurance company had improperly inspected and certified a boiler as safe. 52 N.J.L. at 246, 19 A. at 474. The boiler subsequently burst and "injured the adjacent property of the plaintiff." *Id.* The Supreme Court of New Jersey stated:

> the insurance company, as soon as it took part, practically, in the management of this machine, became subject to a duty in that particular, by virtue of its contract with the Ivanhoe Paper–Mill Company, to conduct itself with care and skill, and by virtue of the law to a similar duty towards the plaintiff; and it is the violation of this latter duty which, we think, forms a legal foundation for this action.

*Id.* at 247, 19 A. 472. In this case, there is no evidence that Aetna was negligent in conducting the dust tests or in making its recommendations, unlike the insurer in *Van Winkle* who negligently inspected the boiler. As such, *Van Winkle* is inapplicable since the Plaintiffs have failed to come forward with evidence showing that Aetna performed these tests or made its recommendations negligently.

Further, in *Van Winkle,* the employer relied upon the safety inspection and certification of the boiler by the insurance company. *Id.* at 241, 242–43, 19 A. 472 (stating insurance company would inspect and test boiler and that insurance company furnished the required certificates for the boiler). However, the Berlin plant had the ultimate responsibility regarding safety issues as evidenced by their own safety team and its rejection of some of Aetna's recommendations. As such, the reliance on the part of the employer that was present in *Van Winkle* is absent in this case.

Unlike the characteristics that distinguish this case from *Van Winkle,* two other state cases from New Jersey are more directly on point. *See Brooks v. N.J. Mfrs. Ins. Co.,* 170 N.J.Super. 20, 405 A.2d 466 (1979); *Jackson,* 400 A.2d 81. For example, in *Brooks,* the Superior Court of New Jersey, Appellate Division ("New Jersey Appellate Division") found that the trial judge had properly granted summary judgment for an insurance company. 405 A.2d at 468. In *Brooks,* the insurance company "would visit the plant about once a year and, in the company of the plant's assistant manager, make an 'eyeball tour' or 'walk-through' of the plant[.]" *Id.* The New Jersey Appellate Division noted, however, "that safety was the sole responsibility of the management and that the company did not in any way rely on the [insurance company's] annual tour of the plant." *Id.* Similarly, the Berlin plant had its own safety team who had the responsibility to maintain safety at the Berlin plant. Aetna never assumed this responsibility nor did the Berlin plant rely on the recommendations of Aetna as evidenced by its rejection of the vacuum cleaning system recommendation made by Aetna.

The *Jackson* case is also instructive. In *Jackson*, the plaintiff sued the Workers' Compensation carrier alleging that the carrier was negligent in inspecting a rubber mill where the plaintiff worked and for the carrier's failure to notify and require the employer to correct a hazardous condition. 400 A.2d at 83. Importantly, the New Jersey Appellate Division found that the plaintiff had failed to prove that the employer relied on the Workers' Compensation carrier's annual inspections. *Id.* at 86. The court found that the employer did not rely on the inspections since the employer had its own "safety committee whose function it was to implement safety rules for the plant." *Id.* Additionally, the court in *Jackson* noted that the superintendent of the plant at times "did not follow many of the recommendations or suggestions made by [the Workers' Compensation carrier]." *Id.* In sum, the New Jersey Appellate Division agreed "with the trial judge's holding that plaintiff failed to show that [the employer] relied upon the annual inspections of [the workers' compensation carrier] for plant safety, and thus, failed to prove an essential element of the case against [the workers' compensation carrier]." *Id.* Like *Jackson,* I find that the Berlin plant had its own safety team and that this safety team did not always follow Aetna's safety recommendations. Thus, the Plaintiffs have failed to prove an essential element of their claim against Aetna.

Under Section 324A and Section 323, the Plaintiffs must show that Aetna did not act with reasonable care in conducting its "undertakings." As set forth above, there is nothing in the record to show how Aetna acted without reasonable care as it related to the dust tests and recommendations. While Aetna was not negligent in its "undertakings" and the employer did not delegate its safety responsibility to Aetna, since the parties focused their arguments on the various subsections of Section 324A, this Court will briefly analyze them.

First, the Plaintiffs have failed to show how Aetna's "undertakings" increased the risk of harm to Mr. Daraio under subsection (a). As previously stated, there is nothing in the record that suggests that Aetna's tests or recommendations to the Berlin plant were done negligently. Thus, this Court cannot find how Aetna's "undertakings" increased the risk of harm to Mr. Daraio.[3]

Second, as to subsection (b) of 324A, the record is clear that the Berlin plant had its own safety team who had the ultimate authority regarding the safety of the Berlin plant. Aetna's role was limited to dust studies and recommendations. Aetna performed this role, and there is nothing to suggest that Aetna should be held liable for the overall safety of the Berlin plant. Therefore, since its duty was limited to perform dust studies and make recommendations and not the overall safety of the Berlin plant, Aetna cannot be found liable under Section 324A(b).

Finally, the Plaintiffs have not satisfied Section 324A(c). Under Section 324A(c), Mr. Daraio must prove that he suffered a harm and injury because of his reliance on Aetna's dust tests and recommendations. I reiterate that Aetna's actions at the Berlin plant were to perform dust studies and make recommendations to the Berlin plant and to Owens Corning. As stated previously, the Plaintiffs have failed to present

**3.** While Aetna *could* have warned the Berlin plant's employees directly, they never undertook the task of creating a safe environment for the employees, as evidenced by the Berlin plant's safety team having the ultimate decision-making power as to safety issues. This duty to warn the employees stayed with and remained a duty of the Berlin plant's safety team and not Aetna.

evidence to suggest that Aetna was negligent in performing its "undertakings." To become liable under subsection (c), the Plaintiffs must show that Aetna failed to use reasonable care in conducting these dust studies and recommendations and that Mr. Daraio suffered harm by relying on these dust tests. The Plaintiffs have failed to show this. First, Aetna has set forth Mr. Daraio's deposition testimony in which he stated that he solely relied upon his employer to keep him safe and that he answers at his deposition (Def.'s Mot. for Summ. J., Ex. B, at 109). Plaintiffs counter with Mr. Daraio's subsequently filed affidavit which states that he relied upon the people he saw inspecting the dust collection equipment to keep him safe. (Pls' Ans. and Memo of Law in Opp'n to Def. Aetna Mot. for Summ. J., Ex. J). However, even if this Court were to consider this affidavit, it does not create a material issue of fact. This affidavit does not make Aetna liable under subsection (c) since Aetna's "undertaking" was not to provide Mr. Daraio with a safe work environment but rather, its "undertaking" was only to perform dust studies and make recommendations so that the Berlin plant could then decide how best to proceed. The responsibility of keeping the employees safe always remained with the Berlin plant and Owens Corning. Again, subsection (c) creates liability if the harm is suffered because of Mr. Daraio's reliance upon the undertaking. Here, however, the Plaintiffs seek to increase the scope of Aetna's "undertaking" through Mr. Daraio's affidavit by arguing that he relied on Aetna to keep him safe. However, safety was always left up to the safety team at the Berlin plant and this Court cannot hold Aetna liable for something that they never had a responsibility for.

Finally, the Plaintiffs rely upon *Barbaccia v. Johns–Manville Corp.*, No. 81–0490, slip. op. at 2–4 (D.N.J. Aug. 18, 1987) in their attempt to overcome Aetna's Motion for Summary Judgment. As in this case, *Barbaccia* involved a former employee of the Berlin plant. The plaintiff argued that Aetna should be liable under Section 324A. *Id.* at 2–3. The judge in that case found that the record revealed disputed issues of facts as to whether Aetna assumed the duty to warn the plant employees about the asbestos levels. *Id.* at 4. The court noted that Aetna submitted nothing beyond its assertion that it never assumed a duty to protect the Berlin plant workers from exposure. Unlike *Barbaccia* however, this Court finds that the record is not so unclear. Importantly, the record reveals that there was no reliance on the part of Owens Corning and the Berlin plant on Aetna's dust studies as evidenced by the plant's own safety team and its rejection of some of Aetna's recommendations. Also, the Plaintiffs have come forward with no evidence showing that Aetna was negligent in conducting its dust studies. Thus, there can be no liability based on Section 324A or Section 323.

## B. THIRD PARTY BENEFICIARY

█ Plaintiffs also state that Aetna is liable based on Mr. Daraio's third party beneficiary status relating to the dust studies and recommendations made by Aetna. As the Superior Court of New Jersey has noted:

> [t]he essence of contract liability to a third party is that the contract be made for the benefit of said third party within the intent and contemplation of the contracting parties. Unless such a conclusion can be derived from the contract or surrounding facts, a third party has no right of action under that contract despite the fact that he may derive an incidental benefit from its performance.

*Gold Mills, Inc. v. Orbit Processing Corp.*, 121 N.J.Super. 370, 373, 297 A.2d 203, 204 (1972). In this case, it remains unclear

whether there was a contract in place between Aetna and Owens Corning as to Aetna's performance of the dust tests and recommendations. For example, at oral argument, Plaintiffs' Counsel asserted that he was "proceeding under the assumption that it was a gratuitous undertaking by Aetna" and that the motive behind Aetna's performance was to reduce compensation claims to protect its bottom line. (Oral Argument Tr., Mar. 13, 2004, at 26–27). However, even if there was a contract in place to perform these tests, the Plaintiffs have failed to show how Aetna breached this contract since there is no evidence that the tests were performed negligently or that the recommendations were negligently made. Rather, the Plaintiffs argue that Aetna breached this purported contract by failing to warn Mr. Daraio and to ensure its recommendations were followed. However, there is no evidence in the record to suggest that Aetna took on this responsibility. In fact, the evidence shows that this responsibility at all times remained with the Berlin plant and Owens Corning. Therefore, even if there was a contract between Owens Corning and Aetna regarding the performance of the dust studies, the Plaintiffs have failed to show how Aetna breached this contract since there is no proof Aetna negligently performed its duties under the purported contract.

In support of their Third Party Beneficiary theory, the Plaintiffs cite to *Marko v. Sears, Roebuck & Co.*, 24 N.J.Super. 295, 94 A.2d 348 (1953). This Court finds *Marko* readily distinguishable. *Marko* involved a plaintiff who was injured by a lawn mower when the lawn mower blade did not stop when it hit a rock. 94 A.2d at 348–49. The New Jersey Appellate Division agreed with the trial judge's dismissal of the negligence and breach of implied warranty counts, but found that the plaintiff had made out a *prima facie* case for his breach of an express warranty. In

*Marko,* the salesperson for Sears had stated to the plaintiff that the mower blade would stop revolving when it hit something sticking out of the ground. *Id.* at 349. Thus, the court found that Sears could be found liable for breaching an express warranty. *Id.* at 350–52.

Unlike *Marko,* Aetna never made an express warranty to provide a safe work environment. This task was left up to the Berlin plant and Owens Corning as evidenced by the plant having its own safety team. It was this safety team who decided how best to proceed in light of Aetna's recommendations. Thus, Aetna cannot be held liable to Mr. Daraio under any purported third party beneficiary status.

## C. BREACH OF FIDUCIARY DUTY

■ The Plaintiffs admit that they have never alleged a claim against Aetna for breaching a fiduciary duty owed to Mr. Daraio until their Response Brief to Aetna's Motion for Summary Judgment. However, the Plaintiffs seek to amend their Complaint which was originally filed in 1989. At this late date, even if this Court were to allow the Plaintiffs leave to amend their Complaint, such leave would be futile since this claim would not be able to survive summary judgment.

Initially, the New Jersey Appellate Division has made it clear that imposition of tort liability against a workers' compensation carrier inspecting a work site is governed by Sections 324A and 323 of the Restatement (Second) of Torts. *See Jackson,* 400 A.2d at 85. This Court has already found that Sections 324A and 323 do not impose liability on Aetna. However, I will briefly examine Plaintiffs' breach of fiduciary duty claim because it also cannot survive summary judgment.

In support of their argument, the Plaintiffs cite to the Restatement (Second) of Torts which states, "[o]ne standing in a

fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." RESTATEMENT (SECOND) OF TORTS § 874 (1965). The relationship between Mr. Daraio and Aetna was that of Workers' Compensation carrier and employee. Mr. Daraio seeks to impose on Aetna a duty that it never acquiesced to, namely to provide Mr. Daraio a safe work environment. While Owens Corning had this duty as the employer, there is nothing in the record to suggest that Aetna took on this responsibility.

The Plaintiffs have cited a number of cases in support of their breach of Aetna's fiduciary obligation to Mr. Daraio. This Court finds all of these cases readily distinguishable. For example, one case cited to by the Plaintiffs to support their fiduciary claim is *Unruh v. Truck Insurance Exchange*, 7 Cal.3d 616, 498 P.2d 1063, 102 Cal.Rptr. 815 (1972). However, this case involved a workers' compensation carrier who had its investigator befriend an employee so that the carrier could then film the plaintiff at Disneyland performing activities beyond her normal physical capabilities. 102 Cal.Rptr. 815, 498 P.2d at 1066. The issue as stated by the California Supreme Court was whether an insurer can be sued when it "negligently fails to control its agents and employees as to the limit, scope and manner of its non-medical investigation of an insured employee's claim for compensation." *Id.* at 1071. Thus, *Unruh* is factually distinguishable in that it did not involve a Workers' Compensation carrier inspecting a work site and providing recommendations to the employer.

This Court finds that the remaining cases cited to by the Plaintiffs to support this claim are also distinguishable. For example, the Plaintiffs cite to *Coleman v. American Universal Insurance Co.*, 86 Wis.2d 615, 273 N.W.2d 220 (1979). The

issue on appeal to the Wisconsin Supreme Court was "whether a worker who sustains an injury covered by the Worker's Compensation Act may assert in the courts a separate claim for damages where the worker's compensation insurer and its agent allegedly acted in bad faith in the processing and payment of the claim." *Id.* at 221. That court held that "where a worker's compensation insurer acts in bad faith in the settlement or payment of compensation benefits, a separate tort is committed that is not within the purview of the exclusivity provisions of the worker's compensation law and that the separate tort of bad faith may be alleged and proved in the courts." *Id. Coleman* involved a claim of bad faith against the insurer based upon its failure to provide workers compensation payments. It did not involve imposing a duty on the Workers' Compensation carrier to provide the employee with a safe work environment based upon its inspections and recommendations. Therefore, *Coleman* is also readily distinguishable.

The remaining four cases cited by the Plaintiffs also involved claims against a Workers' Compensation carrier for the improper handling/processing of benefit payments on the employee's workers' compensation claim itself. In Mr. Daraio's case, however, his allegation is not that Aetna improperly withheld benefits, but that it owed him an additional duty to provide him with a safe work environment. For the reasons previously discussed, Aetna never undertook this duty, and thus, never breached its fiduciary obligation to Mr. Daraio. Therefore, the cases the Plaintiffs rely on are all distinguishable.

## IV. CONCLUSION

This Court has examined all of the Plaintiffs theories for holding Aetna liable. First, this Court has found that the record lacked any evidence of negligence on the

716

part of Aetna regarding its "undertakings" at the Berlin plant. Owens Corning and the Berlin plant did not rely on Aetna to make the plant safe as evidenced by the Berlin plant's rejection of some of Aetna's recommendations and the Berlin plant having its own safety team in place. Additionally, this Court has found that the Plaintiffs failed to show how Aetna could be found liable under any subsection of Sections 324A or 323. Finally, this Court examined the Plaintiffs' Third Party Beneficiary claim and their Breach of a Fiduciary Duty claim and found that neither claim can survive summary judgment. Therefore, Aetna's Motion for Summary Judgment is granted.

An appropriate Order follows.

### ORDER

**AND NOW,** this 25th day of March, 2004, upon consideration of the Motion for Summary Judgment filed by the Defendant, The Aetna Life and Casualty Company, n/k/a/ Travelers Casualty and Surety Company ("Aetna"), the Response, Replies, Memoranda and Exhibits attached thereto, it is hereby **ORDERED** that Aetna's Motion is **GRANTED.**