942 A.2d 127 (2008)
398 N.J. Super. 474
Daniel FACKELMAN and Barbara Fackelman, h/w, Plaintiffs-Appellants,
v.
LAC d'AMIANTE du QUEBEC, LTEE and Rapid American Corporation, Defendants, and
The St. Paul Travelers Companies, Inc., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 2007.
Decided March 3, 2008.
*128 Hal Pitkow argued the cause for appellants.
Francis X. Manning, Cherry Hill, argued the cause for respondent (Stradley Ronon Stevens & Young, LLP, attorneys; Samuel J. Arena, Jr., of counsel; Mr. Manning and Sean R. Adam, of counsel and on the brief).
Before Judges CUFF, LIHOTZ and SIMONELLI.
The opinion of the court was delivered by
CUFF, P.J.A.D.
This appeal concerns whether the workers' compensation insurer which performed industrial hygiene studies for plaintiff's[1] employer at plaintiff's place of employment had a duty to educate and warn employees of any danger. We hold that the insurer did not have such duty and affirm.
Plaintiff commenced this action against Lac d'Amiante du Quebec, Ltee (Lac d'Amiante), Rapid American Corporation (Rapid American) and The St. Paul Travelers Companies, Inc. (Aetna).[2] Lac *129 d'Amiante and Rapid American mined, manufactured and supplied asbestos products to plaintiff's employer, Owens Corning, Fiberglas Corporation (Owens Corning). Aetna performed industrial hygiene studies at the Owens Corning facility in Berlin. Plaintiff was employed by Owens Corning at the Berlin facility, where he was exposed to asbestos, from 1967 to 1968.
In his complaint, plaintiff alleged that Aetna "assumed a duty and contracted to provide [Owens Corning] with information, dust studies, inspections, instructions, supervision, recommendations, assistance, notices, reports, methods, findings, cautions, warnings, designs, devices, equipment, safeguards, guidance, and services to adequately and reasonably provide safe working conditions, and to preserve and protect the life, health and safety" of Owens Corning employees. Plaintiff further alleged that Owens Corning employees depended on Aetna to protect their lives and health, that Aetna knew that Owens Corning was not taking the measures necessary to protect the health of its employees, and that Aetna, through its active and passive negligence, failed to exercise the care and skill required to preserve and protect the health and safety of Owens Corning employees. Plaintiff also asserted that Aetna expressly and impliedly warranted that its undertaking was reasonably accurate, reliable and professionally competent and that Aetna breached its warranties by failing to disclose to Owens Corning and its employees the existence of dangerous conditions at the Berlin facility. Finally, plaintiff alleged that he and other employees at the Berlin facility were third-party beneficiaries of the undertaking between Aetna and Owens Corning and that Aetna's negligence, breach of contract and breach of warranties caused and permitted injury to the third-party beneficiaries.
The facts, viewed in the light most favorable to plaintiff, are as follows. Plaintiff commenced employment at the Berlin facility of Owens Corning in July 1967. He was nineteen years of age. His principal job during the next ten months was a "stripper on the line." Plaintiff explained that he took Kaylo, or asbestos pipe covering, out of a mold and stacked it in a bin. Sometimes the product broke or shattered. Plaintiff gathered the fragments and threw them in a dumpster. The area was dusty. He described the air conditions as "[s]ometimes it was tough to see like a bad, foggy day."
When he commenced his employment, plaintiff was placed on a practice line to determine if he had the dexterity to do the job. His employer gave him no information about asbestos. He was not required to wear a mask or other breathing protection, although "white painting masks" were available for use by employees and some employees wore these masks. Plaintiff also testified that at some time during his employment a co-worker was given a device to wear on his chest by "strangers" to test the air. Some of these strangers examined equipment, some observed how the workers performed their job functions. According to plaintiff, the employees were not informed of the results of any testing. He expected his employer or the company that performed the tests to inform the employees or their union of the test results and "if it was anything dangerous or something [that] would hurt us or whatever."
Plaintiff left his employment with Owens Corning in May 1968. In 2002, his physician advised him that he had asbestosis.
The record reflects that between 1958 and 1972, Aetna performed various air sample surveys, industrial hygiene studies, and special hazard studies at the Berlin plant. The engineering department of the Philadelphia division of Aetna performed *130 inspection and advisory work for Aetna underwriters on new and existing accounts. Aetna "serviced [its] larger insureds in various safety matters, training programs, literature, helping them hold safety meetings, assisting them as best [they] could in their particular safety program." Between 1958 and 1965 Aetna may have been the only entity performing air sampling at the Berlin plant. Following receipt of results of periodic air sampling, representatives from Aetna met with Owens Corning representatives to review the results, to discuss the Owens Corning response and to offer advice. The purpose of the meetings was to prompt Owens Corning to reduce high exposure levels and to contain the dust in the plant.
According to the record, between 1958 and 1972, there were occasions when dust levels at various places or worksites at the Berlin facility exceeded air quality thresholds. At other times, dust levels were at or under air quality thresholds. During this period, air quality thresholds progressively declined from 10,000,000 particles per cubic foot to 5,000,000 particles per cubic foot and eventually to 2,000,000 particles per cubic foot. The record also reveals that Aetna acknowledged and commented positively when conditions had improved and when masks or other protective devices or measures had been implemented by Owens Corning.
The record also demonstrates that Owens Corning had personnel assigned to workplace safety company-wide and at the Berlin facility. In August 1969, Owens Corning adopted a safety program. Upon receipt of the program, Aetna requested its personnel to "attempt to determine whether or not the plant is complying with the program." Aetna personnel were encouraged to advise and help the plant to implement the program. The Owens Corning program recommended the creation of a plant safety committee. The program addressed the entire spectrum of safety issues from workplace accidents and investigations to special hazard surveys that addressed industrial noise, machine guarding, health hazards of materials, fire and explosion, and other industrial exposures. The program anticipated that "Aetna engineers will assist local personnel in their follow  through of a corporate loss control program  working with management, safety personnel, and supervisors at each plant."
Moreover, the Berlin plant manager confirmed that Owens Corning adopted a more affirmative program to address health hazards posed by asbestos in 1968-69 and that the company consulted with Aetna. The program included education about the health hazards of asbestos, the need to wear respirators, and enforcement of the use of respirators. By July 28, 1971, the Owens Corning training program on health hazards was mandatory for all employees. In 1972, Owens Corning eliminated asbestos as a constituent material in its production processes.
Judge Little granted the Aetna motion for summary judgment. In his oral opinion, the judge found that Aetna had a contract with Owens Corning to make certain studies and did so. He found that Aetna provided the results of the studies and certain recommendations to Owens Corning. In addressing the duty owed by Aetna to Owens Corning, the judge found that "[w]hat Owens did with [the survey results] is Owens' business." The judge then held that "if there was any duty to the employees[,] that duty was owed by Owens." Plaintiff appeals from the order granting Aetna's motion for summary judgment.[3]
*131 Plaintiff contends that Aetna is liable to him because it undertook to perform industrial hygiene surveys, including dust studies of the Berlin plant, which were necessary for the protection of employees of that facility, and that it failed to warn the employees of elevated dust levels of substances, such as asbestos, or educate the employees on measures to avoid or to minimize the danger caused by the substances to which they were exposed. Plaintiff does not assert that Aetna negligently performed these studies. He does allege that Aetna assumed the duty owed by his employer to provide a safe place to work, and that employees knew of Aetna's undertaking and relied on it to inform them of any dangers.
Aetna responds that it performed any and all surveys competently and that it never assumed any duty of the employer to provide a safe place to work for its employees. It argues that the duty plaintiff urges this court to recognize is unsupported by the facts and established legal principles.
The precise issue presented in this appeal has been raised in other cases and decided in favor of the insurer in each instance. Such cases filed in state court have not been the subject, of published opinions. The cases filed in federal court applied the law of this state, which expressly rejects plaintiff's theories of liability. See Daraio v. Carey Canada, Inc., 309 F.Supp.2d 706, 709 (E.D.Pa.2004). Plaintiff urges that the facts of this case demonstrate that liability should be imposed on Aetna because it assumed the duty of the employer to provide a safe place to work, or that plaintiff and other employees reasonably relied on Aetna to communicate to them the known dangers in their work environment. We find no basis in law to reconsider the prior precedent and no factual basis to impose any duty on Aetna to the Owens Corning employees.
Restatement (Second) of Torts § 324A (1965) governs liability of third parties for negligent performance of an undertaking; it provides:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person . . . is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
This court follows this rule in any consideration of the imposition of liability on a party in the position of Aetna. Jackson v. N.J. Mfrs. Ins. Co., 166 N.J.Super. 448, 457-58, 400 A.2d 81 (App.Div.), certif. denied, 81 N.J. 330, 407 A.2d 1204 (1979); Viducich v. Greater N.Y. Mut. Ins. Co., 80 N.J.Super. 15, 18-19, 192 A.2d 596 (App.Div.), certif. denied, 41 N.J. 129, 195 A.2d 21 (1963).
In Jackson, supra, the judge involuntarily dismissed at trial the plaintiff's claim against the workers' compensation insurer. 166 N.J.Super. at 453, 400 A.2d 81. The plaintiff alleged that the workers' compensation insurer was negligent by its failure to notify the employer of the hazardous *132 condition of its equipment and to require the employer to rectify the hazard. Id. at 456, 400 A.2d 81. This court noted that "reliance on the part of the insured is a basic and necessary prerequisite to the imposition of liability under the principles . . . of the Restatement." Id. at 458, 400 A.2d 81. We rejected the contention that the plaintiff had demonstrated the requisite reliance by the plaintiff's employer because the evidence established that the employer had reserved workplace safety to itself. Id. at 458-59, 400 A.2d 81. Moreover, there was no proof that the workers' compensation insurer had undertaken to make a safety inspection of the entire plant or had a contractual obligation to do so. Id. at 459, 400 A.2d 81. See also Viducich, supra, 80 N.J.Super. at 23-24, 192 A.2d 596 (finding inspection made by workers' compensation and general liability insurer at the commencement of the policy period insufficient basis to lead the employer or its employees to believe that it had undertaken to insure safety at the worksite).
In Brooks v. New Jersey Manufacturers Insurance Co., 170 N.J.Super. 20, 24, 405 A.2d 466 (App.Div.), certif. denied, 81 N.J. 413, 408 A.2d 806 (1979), the plaintiff injured his arm while working on a machine. The record revealed that a representative of the workers' compensation insurer visited the facility once a year and walked through the facility accompanied by the plant's assistant manager. Id. at 25, 405 A.2d 466. The record also demonstrated that safety was the sole responsibility of management, that the employer did not rely on the insurer's tour of the facility and that the insurer was under no contractual obligation to tour the facility. Ibid. We held that the trial court properly entered summary judgment in favor of the insurer. Ibid.
In Viducich, supra, the workers' compensation insurer for a newly organized business had a contractual right to inspect the premises, equipment and machinery of its insured. 80 N.J.Super. at 17-18, 192 A.2d 596. The insurer inspected the premises and equipment prior to issuance of the policy to determine its premium remuneration. Id. at 18, 192 A.2d 596. The insurer did not report the results of its inspection to its insured. Ibid. Noting that the workers' compensation insurer did not contract with its insured to conduct inspections and report the results to its insured, id. at 19, 192 A.2d 596, we found that the insurer "did nothing which could have led [the insured] or any employee to believe that [the insurer] had undertaken to make inspections or to report to [the insured] dangers which it found, and nothing which could have led anyone to rely upon the performance by [the insurer] of any such undertaking." Id. at 23, 192 A.2d 596. Therefore, we found no basis to depart from the general rule that barred liability. Id. at 24, 192 A.2d 596.
More recently, in Daraio, supra, a claim against Aetna commenced by a person employed at the Owens Corning plant in Berlin during the summer of 1960 and from 1961 thru 1966 was dismissed on summary judgment. 309 F.Supp.2d at 707-08. The plaintiff raised similar theories of liability and, as in this case, did not assert that Aetna negligently performed the dust studies. Id. at 709-10. Applying New Jersey law, the federal district court found, based on the record before it, that Owens Corning retained the responsibility for safety at the plant and did not rely on the recommendations submitted by Aetna. Id. at 710. Therefore, the plaintiff could not establish either an undertaking as required by section 324A(b), or reliance as required by section 324A(c). Id. at 711-13. Furthermore, in the absence of any evidence that Aetna negligently performed *133 its dust studies or negligently assessed the results or negligently prepared its recommendations, the plaintiff could not establish that Aetna increased the risk of harm to the Owens Corning employees. Id. at 711-12. Specifically referring to the plaintiff's certification in which he stated that he relied on the people conducting the dust studies to keep him safe, the court stated:
This affidavit does not make Aetna liable under subsection (c) since Aetna's "undertaking" was not to provide [plaintiff] with a safe work environment but rather, its "undertaking" was only to perform dust studies and make recommendations so that the Berlin plant could then decide best how to proceed. The responsibility of keeping the employees safe always remained with the Berlin plant and Owens Corning. . . . [S]afety was always left up to the safety team at the Berlin plant and this Court cannot hold Aetna liable for something that they never had a responsibility for.
[Id. at 713.]
These authorities are entirely consistent with the law on this issue throughout the country. One leading commentator notes that the field of third-party litigation is "volatile" and "few were so dramatic and fast-moving for a time as the line of cases in which injured employees have attempted to treat the compensation carrier as third party for purposes of tort suits." 6 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 114.01 (2007). Section 324A of the Restatement is the principle theory on which liability has been imposed on an insurer in those jurisdictions where such liability has not been precluded by legislative action and then only in instances in which at least one of the three circumstances identified by section 324A has been met. Amy Schulman, Recent Developments in Self-Insurance and Risk Management, 31 Tort & Ins. L.J. 479, 480-81 (1996). See also John Dwight Ingram, Liability of Insurers for Negligence in Inspection of Insured Premises, 50 Drake L.Rev. 623 (2002). Moreover, the primary bases for imposing liability on the insurer are the assumption by the insurer of the employer's duty to provide a safe place to work or representations by the insurer to induce reliance on its safety program. See Pratt v. Liberty Mut. Ins. Co., 952 F.2d 667, 670-71 (2d Cir.1992) (plaintiff must prove that insurer has substituted itself for the insured's normal accident prevention activities); see also Ingram, supra, 50 Drake L.Rev. at 628-32; Schulman, supra, 31 Tort & Ins. L.J. at 482-84.
As in Daraio, Jackson, Brooks and Viducich, the factual record provides no basis for recovery by plaintiff against Aetna, the workers' compensation insurer for Owens Corning. We also discern no basis to depart from well-settled law in this state.
Here, Aetna conducted dust studies at least annually and reported the results to its insured. The record reveals that Owens Corning accepted some of the recommendations and deferred implementation of other recommendations. Notably, we have not been provided with the policy in effect during the time of plaintiff's employment. We, therefore, infer that the contract of insurance does not provide any basis to find that Aetna assumed responsibility for workplace safety at the Berlin facility. Moreover, in the face of no allegation that the dust studies were negligently performed or not reported to Owens Corning, there is no factual basis to find that anything done by Aetna increased the risk of harm to the Owens Corning employees.
Finally, the record clearly demonstrates that Owens Corning retained full responsibility for workplace safety at the Berlin plant. The record reveals that Aetna provided *134 information to Owens Corning about dust levels and provided some recommendations to ameliorate dust levels at the Berlin facility, but the record also clearly establishes that Owens Corning treated Aetna's undertaking as informational only. Owens Corning created a safety committee, adopted safety protocols, and implemented those measures. There is no suggestion in this record that its request for information and occasional assistance was indicative of a surrender of its responsibility for safety to a third party.
In the alternative, plaintiff argues that ordinary principles of tort liability support the recognition of a duty by Aetna to reduce the risks of harm at the Berlin facility and to warn the employees directly of those risks. Plaintiff cites Aetna's knowledge of the dangers of asbestos and the hazardous working conditions at the facility. He contends that foreseeability of harm is a significant factor in recognizing this duty, and Aetna's knowledge provides the basis for imposition of this duty. We disagree that, under the facts of this case, the workers' compensation insurer had a duty to reduce the risks of exposure or to warn the employees directly.
The existence of a duty to exercise reasonable care to avoid a risk of harm to another is a question of law. Oliva v. Owens-Illinois, Inc., 186 N.J. 394, 401, 895 A.2d 1143 (2006); Wang v. Allstate Ins. Co., 125 N.J. 2, 15, 592 A.2d 527 (1991). It turns on fairness and policy that, in turn, implicate many factors. Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572, 675 A.2d 209 (1996).
"[F]oreseeability of harm is a significant consideration," in fact, it is a crucial element in the analysis. Ibid. It is not, however, determinative. Id. at 573, 675 A.2d 209. Considerations of fairness and policy are also essential elements of the analysis. Ibid. Factors such as the relationship of parties, responsibility for creation of the conditions creating the risk of harm, the element of control arising from the relationship, the opportunity and capacity for the defendant to avoid the risk of harm, and actual awareness of the risk of harm are all significant factors in any determination whether fairness and policy support imposition of a duty to exercise reasonable care to another. Id. at 574-77, 675 A.2d 209.
In Carvalho, the Court imposed on the project engineer the duty to exercise reasonable care for the safety of construction workers under circumstances where the risk of harm from the collapse of a trench was clearly foreseeable, the engineer knew the trench was unstable, progress of the work implicated safety, and the on-site engineer had sufficient control of the site to halt work until adequate measures were undertaken. Id. at 567-77, 675 A.2d 209, These circumstances are not present in this case.
In Olivo, supra, the Court imposed a duty of care for a worker's family member on the owner of the premises at which production activities occurred that exposed workers and family members to asbestos. 186 N.J. at 404-05, 895 A.2d 1143. Exxon-Mobil, the owner of the Paulsboro petroleum plant at which the decedent's husband worked, knew for decades the risks posed by asbestos; yet failed to warn workers of the risk or implement protocols to minimize the risk to the workers and their families. Id. at 399, 404, 895 A.2d 1143.
The issue in Carvalho, supra, was more akin to liability for conditions on the premises rather than liability for the risks attendant to an industrial process. 143 N.J. at 577-78, 675 A.2d 209. In Olivo, supra, the Court expressly approached the issue of the duty owed by the employer as one of *135 landowner liability. 186 N.J. at 403-04, 895 A.2d 1143. Here, the relationship between Aetna and plaintiff's employer is contractual. The precise terms of the contract of insurance, and specifically any provision regarding the conduct by Aetna of air studies at the Berlin facility, are not known. More importantly, this record also provides no basis to find that Aetna had any control of the Berlin facility, such as the ability to impose certain workplace protocols or to halt operations at the facility until adequate measures were in place. That is manifestly different than in Olivo, supra, where the owner of the petroleum plant knew of the dangers associated with its process and failed to warn its workers of the risks associated with exposure to asbestos and failed to adopt measures to minimize the risk, 186 N.J. at 405, 895 A.2d 1143; and in Carvalho, supra, where the project engineer knew of the risk posed by the instability of the trench and had sufficient control of the site to halt operations to allow stabilization of the trench. 143 N.J. at 576, 675 A.2d 209.
Finally, plaintiff contends that he is a third-party beneficiary of the contractual relationship between Aetna and his employer. Whether contract liability to a third party exists is informed by "`whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts. . . .'" Werrmann Aratusa, Ltd., 266 N.J.Super. 471, 476, 630 A.2d 302 (App.Div.1993) (quoting Rieder Communities, Inc. v. Twp. of N. Brunswick, 227 N.J.Super. 214, 222, 546 A.2d 563 (App.Div.), certif. denied, 113 N.J. 638, 552 A.2d 164 (1988)). A court must find that the parties to the contract intended and contemplated that the contract would benefit a party. Gold Mills, Inc. v. Orbit Processing Corp., 121 N.J.Super. 370, 373, 297 A.2d 203 (Law Div.1972).
In Daraio, supra, the plaintiffs asserted a similar claim on identical facts. 309 F.Supp.2d at 713-14. As in this case, the policy of insurance was not provided. Ibid. Therefore, the court was unable to determine the precise circumstances of the performance of the dust studies. Id. at 714. Nevertheless, the district court rejected the plaintiffs' breach of contract claim and found that they "failed to show how Aetna breached this contract since there is no proof Aetna negligently performed its duties under the purported contract." Ibid. The district court explained that the plaintiffs put forth no evidence showing that Aetna performed the dust tests negligently or negligently made recommendations to the Berlin plant and Owens Corning, and further noted that Owens Corning retained the authority at all times to address safety at the Berlin facility. Ibid.
The record in this appeal is virtually identical to the record in Daraio. We, too, cannot identify any evidence that supports a finding that Aetna and Owens Corning contemplated its contractual relationship was made for the benefit of its employees.
We, therefore, affirm the order granting the insurer's motion for summary judgment.
Affirmed.
NOTES
[1] All references to plaintiff are to Daniel Fackelman. Barbara Fackelman filed a per quod claim.
[2] Defendant The St. Paul Travelers Companies, Inc. acquired Aetna Casualty & Surety Company.
[3] Lac d'Amiante filed a petition in bankruptcy. Plaintiff settled with Rapid American. Thus, the order granting Aetna's motion for summary judgment is a final order appealable by right. R. 2:2-3(a)(1).