24 N.J. Super. 295 (1953)
94 A.2d 348
JULIAN LEWIS MARKO, PLAINTIFF-APPELLANT,
v.
SEARS, ROEBUCK AND COMPANY, A BODY CORPORATE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1952.
Decided January 19, 1953.
*296 Before Judges McGEEHAN, BIGELOW and JAYNE.
*297 Mr. John Warren, Jr., argued the cause for plaintiff-appellant (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys; Mr. Theodore D. Parsons, of counsel).
Mr. Robert V. Carton argued the cause for defendant-respondent (Messrs. Durand, Ivins & Carton, attorneys).
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
Plaintiff sued to recover damages for injuries alleged to have been sustained by him while using a rotary type lawn mower which he had purchased from the defendant. The first count of the complaint was grounded on negligence, the second count on implied warranty, and the third count on express warranty. The defendant's motion for dismissal of the action, made at the close of plaintiff's case, was granted by the trial court and the plaintiff appeals.
From the proofs it appeared that the plaintiff visited defendant's store, where he saw and examined a rotary type lawn mower. He told the defendant's salesman that he had an area in the rear of his home which was uneven and covered by high grass, weeds and brush, and that he wanted a mower to be used on this uneven ground to cut high grass and brush. The salesman advised him that the mower which he just examined  a Craftsman rotary power mower  would do the work which he wanted done. In answer to his question as to the safety qualities of the machine, the salesman told him that it was absolutely safe. He then asked "whether or not that machine would stop operating if it came in contact with any object that was sticking out of the ground which might not be visible as you came along" and the salesman assured him "that it definitely would, that he had used one himself and it had cut a pipe, I believe a half an inch thick and stopped immediately; it cut the pipe off and stopped immediately."
The plaintiff had no personal knowledge of the operation of rotary mowers prior to his visit to defendant's store. At the *298 salesman's suggestion, he got a catalog covering this rotary lawn mower from the defendant's catalog department and examined it. In the description of the lawn mower in the catalog there was a statement "Blade completely shielded." He then purchased this lawn mower for $149.50. He took the machine home, put some gasoline in it, and began to cut the grass in the area behind his home. He had used the machine in the back portion of his property for 15 to 20 minutes when, as he described it, "I was pushing the machine along and it came in contact with a sharp  with an object that left a sharp noise as it hit it, like a clang, and the machine bounced back, and as it bounced back it cut through my foot. I looked at the machine and the motor didn't stop, it kept on going." He saw the object struck and it was a rock which was in front of the machine.
While the plaintiff was being hospitalized for the injury he sustained, he requested a friend to return the mower to the defendant and get a refund. This was done and the refund was turned over to the plaintiff. Thereafter, the present suit was instituted.
The mower involved is a rotary type, in which the blade is power-driven and rotates on its axis parallel to the ground. Although the blade is power-driven, the mower as a unit is not self-propelled, but must be pushed. The blade is encased in metal and there are metal prongs in front, extending below the casement. The plaintiff admitted that during his examination of the mower before purchase he observed the blade and how it was encased, and saw there was an opening in the back and that the blade was open and exposed at this point.
The first count of the complaint, which was grounded on negligence, was properly dismissed. The plaintiff states that this count is grounded on the claim "that the defendant was negligent, in that the mower which defendant sold to plaintiff was not properly designed with a guard in the rear and the blade of the mower did not properly disengage upon striking an obstruction." It was undisputed that the mower *299 in question, which the defendant sold to the plaintiff, had an opening in the back of the casing of the mower on the lefthand side. But there was no testimony that proper design required that such a mower have a guard in the rear or that the blade of such a mower disengage upon striking an obstruction. The plaintiff claims that the uncontroverted testimony of his witness Stedman was to the effect that well constructed mowers have a shield in the back; but the fact is that Stedman gave no such testimony. He went no further than to say that he couldn't recall any other rotary mower except the Craftsman which had an opening in the back, unguarded. In support of the claim that improper design was proven as to the blade of the mower, because it did not properly disengage upon striking an obstruction, the plaintiff relies on the testimony of his witness Beckmann. There was no testimony by Beckmann or any other witness that proper design of a rotary mower required that the blade of the mower disengage upon striking an obstruction.
It was also proper to dismiss the second count, which was grounded on the implied warranty of fitness under R.S. 46:30-21(1). This subsection provides:
"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."
The plaintiff made known to the defendant the particular purpose for which the goods were required, namely, to be used on rough, uneven ground to cut high grass and brush. Not only was there no evidence to support a finding that the machine was not reasonably fit for the stated purpose, but the plaintiff himself admitted that the machine was used on the uneven ground and did cut the high grass and brush in a satisfactory manner.
The third count was grounded on the express warranties that the "mower was safe, would cease operation upon *300 hitting an obstruction, and the blade was completely shielded." Dealing with the last warranty claimed, namely, that the blade was completely shielded, no such representation was made to the plaintiff; but the catalog description of the particular type of mower did state "Blade completely shielded." An action for breach of warranty does not arise as to any defect of which the buyer knows. 1 Williston on Sales (3d ed), § 207; 46 Am. Jur., Sales, § 377. Without considering whether the plaintiff could, in any case, rely upon the catalog description as a warranty, such catalog description can be of no aid to him here, because he admitted that he knew from his own examination of the particular mower before his purchase that the blade was open and exposed in the back where there was an opening.
We think, however, that a prima facie case was made out of breach of the express warranty that the machine was safe and would cease operation upon hitting an obstruction. There was expert testimony that the particular mower was constructed with a friction clutch between the engine and the blade, and this clutch was supposed to operate to stop the revolving of the blade when the blade came in contact with an obstruction of sufficient size; but the construction was also such that the clutch was supposed to release the blade so that it would revolve as soon as it got free of the obstruction. Under the warranty in question made by the salesman, the plaintiff had a right to expect that when the mower struck the rock the blade would stop revolving and the machine would stop operating. From the testimony a jury could legitimately find that there was a breach of this warranty in that the blade did not stop revolving and the machine did not stop operating when it hit the rock; and further that the failure of the blade to stop revolving when it hit the rock caused the machine to bounce back as it did and injure the plaintiff.
It is conceded that this plaintiff, of his own volition, returned the mower to the defendant and claimed a refund, and that the defendant accepted the return and granted the *301 refund. The defendant argues that the plaintiff had thus claimed and been granted the remedy of rescission given by R.S. 46:30-75(1) (d) and that therefore no other remedy for damages for breach of warranty can be granted because of R.S. 46:30-75 (2), which provides:
"When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted."
Since R.S. 46:30-75 in subdivision (1) (d) provides a remedy by way of rescission and refund of purchase price, and in subdivision (1) (b) provides a remedy by way of action for damages for breach of warranty, subsection (2) thereof, relied upon by the defendant, would seem to be a bar to the present suit. It is to be noted also that this section provides in subsection (6):
"The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty."
The plaintiff admits the force of this argument, standing alone, but he argues that his suit may still be brought by virtue of the provisions of R.S. 46:30-76, which provides:
"Nothing in this chapter shall affect the right of the buyer or the seller to recover interest or special damages in any case where by law interest or special damages may be recoverable, or to recover money paid where the consideration for the payment of it has failed."
No case is cited to us, and we have found none in our courts, which construes the provisions of R.S. 46:30-76 in connection with the provisions of R.S. 46:30-75 (2). Professor Williston in his work on Sales (3d ed. 1948) throws little if any light on the seeming conflict between these two sections. Our former Supreme Court in Gerli & Co. v. Mistletoe Silk Mills, 80 N.J.L. 128 (Sup. Ct. 1910), said at p. 129:
*302 "The charge of the learned trial judge did not permit the jury to allow for damages for breach of the contract in case they found it had been rescinded. Such a charge would have been erroneous in law. Under the Sales Act (Pamph. L. 1907, p. 337, § 69 (1) (d), in case of a rescission of a contract to sell or a sale, the buyer is entitled to recover the price or any part thereof which has been paid; and this remedy is made exclusive by paragraph (2) of the same section. It is a logical consequence that where the purchase price has not been paid, the buyer's only remedy in case of rescission is to withhold the price."
and said further at p. 130:
"This remedy is inconsistent with the claim of a rescission of the contract, and at the trial it will be necessary for the defendant to elect whether to stand upon the theory of a rescission and abandon its claim to damages, or to abandon the claim of rescission and rely upon the contract as subsisting and insist on damages for the breach."
However, in National Sand, &c., Co. v. R.H. Beaumont Co., 9 N.J. Misc. 1026 (Sup. Ct. 1931), a plaintiff who rescinded the contract was permitted to recover the price already paid, together with the moneys expended on account of the purchase. And in Norry v. Electric Arc. Inc., 45 A.2d 185 (Sup. Ct. 1946) (not reported in State Reports), the plaintiff who rescinded the contract was permitted to recover the purchase price in full, as well as his profit which was lost by the seller's default. But it is to be noted that in these New Jersey cases no consideration was given to the possible effect of R.S. 46:30-76, which protects the right to sue for special damages.
In Russo v. Hochschild Kohn & Co., Inc., 184 Md. 462, 41 A.2d 600, 157 A.L.R. 1070 (Ct. App. 1945), recovery for damages for personal injury to the plaintiff, directly resulting from a breach of warranty, was permitted under the exception in the section of the Sales Act identical with R.S. 46:30-76, although the plaintiff had returned the goods to the seller and obtained a refund. Both rescission and recovery for damages caused by breach of warranty were allowed in Waldman Produce v. Frigidaire Corporation, 157 Misc. 438, 284 N.Y.S. 167 (Sup. Ct. App. Term 1935), *303 and in this case the court, in commenting on the opinion in the New Jersey case of Gerli & Co. v. Mistletoe Silk Mills, above, said:
"This opinion fails to take note of the other provisions of the Sales Act which we have already pointed out and which show that an action for damages such as those claimed in the instant case will lie even after rescission."
The defendant relies on Henry v. Rudge & Guenzel Co., 118 Neb. 260, 224 N.W. 294, in which the Nebraska Supreme Court, in 1929, approved the dismissal of a buyer's action to recover damages for personal injuries resulting from a breach of warranty, putting the dismissal on the ground that she had rescinded and been paid the purchase price and rescission abrogates all rights under the contract. It is to be noted that this case did not consider the section of the Sales Act set forth in R.S. 46:30-76 which saves special damages. Moreover, in 1952 the Nebraska Supreme Court, in Garbark v. Newman, 155 Neb. 188, 51 N.W.2d 315, 326, a case in which the effect of the Sales Act provision saving special damages was considered, followed the Russo case, saying:
"The purpose and effect of the provision of the Uniform Sales Act that the buyer or seller may recover special damages in any case where the law permits the recovery of such damages is to permit the recovery of special damages without regard to whether the transaction to which they are incidental has been rescinded or affirmed. Russo v. Hochschild Kohn & Co., Inc., 184 Md. 462, 41 A.2d 600, 157 A.L.R. 1070; Uniform Laws Annotated, 1A, Sales, § 70, p. 406."
We believe that "special damages" saved in R.S. 46:30-76 should be construed to include damages for personal injuries resulting from a breach of warranty, despite the fact that there has been a rescission and repayment of the purchase price.
Judgment reversed.